IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE STUBERG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-3505-D |
| VS. | § | |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION

Plaintiff Charlene Stuberg ("Stuberg") brings this action under § 205(g) of the Social

Security Act, 42 U.S.C. § 405(g) (the "Act"), for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her claim for widow's insurance

benefits under Title II of the Act.  For the reasons that follow, the Commissioner's decision

is affirmed.

I

Stuberg filed an application for widow's insurance benefits under Title II of the Act

in March 2009 on the earnings record of her former husband, Gary Lee Stone ("Stone"), who

died on January 10, 2009.  The Commissioner denied Stuberg's application initially and on

reconsideration.  Following a hearing, the administrative law judge ("ALJ") found that

Stuberg did not have a valid marriage to Stone and thus she was not entitled to widow's

insurance benefits.  After the Appeals Council denied Stuberg's request for review, Stuberg

sought judicial review.  Thereafter, the Commissioner filed an unopposed motion to remand

because the record was incomplete.  On remand, the ALJ held a second hearing and again denied Stuberg's application, finding that she and Stone did not have a valid common law marriage.  The Appeals Council denied Stuberg's request for review, and the ALJ's decision became the final decision of the Commissioner.

Stuberg maintains that the ALJ erred in finding that she is not Stone's surviving widow, and therefore is not entitled to widow's insurance benefits on Stone's earnings record.  She contends that record evidence establishes that she and Stone had a common law marriage that ended on Stone's death.

## II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam).  "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law."  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]."  *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted).  "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be

affirmed." *Martinez*, 64 F.3d at 173.  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)).  "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted).  Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).  The resolution of conflicting evidence is for the Commissioner rather than for the court.  *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

## III

To be entitled to widow's insurance benefits, a claimant must demonstrate the existence of a valid marriage between herself and the deceased number-holder under the laws of the state in which the deceased resided at the time of his death.  20 C.F.R. § 404.346.  It is undisputed that Stone resided in Texas at the time of his death.  Under Texas law, there are two ways to enter into a valid marriage.  The first is a ceremonial marriage performed by a clergyman or other public official authorized by statute, after the parties have obtained a marriage license.  *See* Tex. Fam. Code Ann. §§ 2.001-03 & §§ 2.201-24 (West 2006); *see*

*also Johnson v. Astrue*, 2012 WL 3561449, at *3 (S.D. Tex. Aug. 15, 2012) ("In Texas, a valid marriage can be established through a ceremony performed by a clergyman or other public official."). The second is an informal marriage, also known as a common law marriage. *See* Tex. Fam. Code Ann. § 2.401; *Johnson*, 2012 WL 3561449, at *3 ("Texas also recognizes common-law marriages."). Stuberg does not dispute the ALJ's finding that she and Stone never attempted to enter into a ceremonial marriage. Thus only the second type of valid marriage—a common law marriage—is at issue in this case.

A claimant must prove three elements to establish a common law marriage with the number-holder: (1) an agreement to be married, (2) cohabitation in Texas as husband and wife after the agreement, and (3) representation to others that they are married. *See* Tex. Fam. Code Ann. § 2.401(a)(2); *see also Johnson*, 2012 WL 3561449, at *3; *In re C. M. V.*, 479 S.W.3d 352, 360 (Tex. App. 2015, no pet.) (citing Tex. Fam. Code Ann. § 2.401(a) (West 2006); *Russell v. Russell*, 865 S.W.2d 929, 932 (Tex. 1993); *Burden v. Burden*, 420 S.W.3d 305, 308 (Tex. App. 2013, no pet.)).[1] "An informal marriage does not exist until the concurrence of all three elements." *In re C. M. V.*, 479 S.W.3d at 360 (citing *Burden*, 420 S.W.3d at 308; *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App. 2001, pet. denied)).[2] These

---

[1]There is one other way to establish a common law marriage in Texas, which is not at issue in this case: the parties file a declaration of their marriage with the county clerk. *See* Tex. Fam. Code Ann. § 2.401(a)(1).

[2]In addition to these three elements, a claimant must show that she commenced a proceeding to prove her common law marriage to the number-holder within two years after the date the relationship ended; otherwise, there is a rebuttable presumption that no common law marriage existed. *See* Tex. Fam. Code Ann. § 2.401(b); *see also Johnson*, 2012 WL

three elements can be proved by direct or circumstantial evidence.  *See Russell*, 865 S.W.2d at 933.

## IV

Stuberg contends that the ALJ's finding that she and Stone did not have a common law marriage is not supported by substantial evidence.

## A

Stuberg avers that the ALJ on remand "cherry-picked" the evidence supporting his denial of Stuberg's claim.  She notes that this case was previously remanded by the district court on the Commissioner's own motion because "'[t]he Commissioner believe[d] the preponderance of the evidence establishe[d] a common law marriage.'"  P. Br. 4 (quoting R. 129).  Further, the Commissioner noted in the motion to remand that the second and final page of Form SSA-753, also known as a Statement Regarding Marriage, was missing from the record.  The Commissioner requested that, upon submission of the form, which Stone's brother, Tal Stone ("Tal"), had completed, the ALJ conduct a new review of the record evidence to determine whether Stuberg has established a valid common law marriage by a preponderance of the evidence.  On remand, Stuberg submitted the complete two-page Form SSA-753 to the ALJ.  Stuberg asserts that this second page—the only new evidence on remand—helps establish a common law marriage because Tal reported on this page that

_____

3561449, at *3.  Because the Commissioner does not contend that Stuberg filed her application for benefits outside this two-year period, the court will assume *arguendo* that Stuberg commenced proceedings within this two-year period.

Stuberg and Stone maintained a home and lived together as husband and wife continuously for 17 years.  Stuberg also asserts that the ALJ, who she contends was set on denying her claim a second time, ignored this evidence and never mentioned it in his second opinion.  She asserts that the ALJ "only listed that which he thought was favorable to his repetitive negative finding: that [Tal] had never personally 'heard' them refer to each other as husband and wife."  P. Br. 5 (citing R. 122).  And Stuberg posits that "[t]he ALJ did not even know if [Tal] had even seen his brother in the past 17 years to personally be able to hear such a statement to answer in the affirmative"; "[t]he ALJ merely took the statement at face value without further inquiry"; and "[t]he ALJ also cite[d] no supporting evidence showing they were together plenty of times for such a reference to even be made."  *Id.* at 6.

Stuberg also maintains that the record evidence establishes the three elements of a common law marriage between her and Stone.  Regarding the first prong—which requires that the two agreed to be married—Stuberg testified that she and Stone decided to live together in a common law marriage.  She also contends that they filed their 2004, 2005, and 2006 federal income tax returns as "married filing jointly,"[3] and before she and Stone separated, Stone sought legal advice and personally drafted a written "Separation Agreement," which divided their assets, that Stuberg and Stone signed and had notarized.  And Stuberg testified that she believed that, by signing the agreement, she was getting a divorce.  Stuberg also testified that, although they did not share a bank account, Stone

---

[3]Income taxes prior to 2004 were not produced.

deposited her checks into his bank account because she did not have a bank account, Stone's bank account was payable upon death to her, and Stone sometimes allowed her to use his debit card and PIN.  Stuberg also testified that she was listed on Stone's health insurance until they separated; they had car insurance together from 1996 until 2008; they went to the Senior Center in Irving as husband and wife; and they went on vacation as "Mr. and Ms. Stone."  And Stuberg states that she did not change her name because she was hoping that, by keeping her last name, her grandson, who was placed up for adoption, would one day find her.

As to the second prong—which requires that the couple cohabitate in Texas as husband and wife after the agreement—Stuberg asserts that they lived together for 17 years as husband and wife from 1991 to October 2007, when they separated.  Under the third prong—which requires that the couple represent to others that they are married—Stuberg testified that their friends and family considered them a married couple; everyone knew her as Stone's wife; they received Christmas cards addressed to "Mr. and Mrs. Stone"; they introduced themselves many times as being married; she introduced Stone as "her husband" and Stone introduced her as "his wife" to their families; she spent Christmas with Stone's family and was with Stone's parents when they passed away; and Stone's parents considered her to be their daughter.  Stuberg points out that her daughter from another marriage considered Stone her father and went to Stone's family home in Sulphur Springs every Christmas.  Additionally, Stuberg notes that her sister signed a statement that she considered Stone to be her brother-in-law, and Tal signed the Form SSA-753, stating that Stuberg and

Stone were married for 17 years.  Stuberg also avers that the landlord of her and Stone's one-bedroom house stated that she believed them to be husband and wife from 1994 to 2007, the entire time she leased to them.

The Commissioner responds that substantial evidence supports the ALJ's finding that Stuberg and Stone were not married under Texas law.  She notes that the ALJ acknowledged at the outset of his second opinion that the Commissioner previously sought voluntary remand because the record was incomplete, and that the Commissioner indicated in her motion for remand that she believed a preponderant evidence indicated a valid marriage.  The Commissioner, however, posits that she has no authority to overrule an ALJ's determination, and she points out that the substantial evidence standard, not the preponderance of the evidence standard, is applicable in this court on judicial review.  The Commissioner contends that, although she disagreed with the ALJ's first determination that no valid marriage existed, substantial evidence nevertheless supports his second determination that no valid marriage existed.  And she maintains that the ALJ did not "cherry pick" the evidence unfavorable to Stuberg's claim, and he even explicitly discussed all of the favorable evidence in his opinion.

Further, the Commissioner asserts that the ALJ cited substantial evidence indicating that the first and third elements of a valid common law marriage were not met.  Regarding the third element, the Commissioner maintains that page two of Tal's Form SSA-753, which was submitted on remand, states that Tal never heard Stuberg or Stone refer to each other as husband and wife.  And the Commissioner notes that there is no record evidence—other than the testimony of Stuberg and her daughter from another marriage—indicating that Stuberg

and Stone publicly acknowledged a marital relationship.  She contends that the ALJ

considered Stuberg and her daughter's testimony but properly determined that this testimony

did not outweigh other evidence, particularly the statement by Tal, who (unlike Stuberg) had

no financial interest in the outcome of this matter.  The Commissioner also asserts that the

regulations state that, to meet the third element, a claimant should procure signed statements

by two blood relatives of the deceased, *see* 20 C.F.R. § 404.726(b), but Stuberg could not

even provide one signed statement from a blood relative of Stone supporting her claim.

Regarding the first element, the Commissioner avers that substantial evidence shows that

Stone never agreed to be married to Stuberg.  For example, she points out that Stone declined

to marry Stuberg in a formal ceremony, even though Stone had previously been married in

formal ceremonies both before and after his relationship with Stuberg.   And the

Commissioner notes that, when Stone filed for Social Security retirement benefits, he

declined to mention his relationship to Stuberg when asked his marital information.

B

The ALJ concluded that Stuberg "failed to establish that it is more likely than not that

she and [Stone] entered into a valid common law marriage" because "[t]he evidence [was],

at best, equivocal as to whether [Stone] ever actually agreed to be married to [Stuberg] as

there [was] substantial evidence supporting, and negating, the point."  R. 123.  In reaching

this conclusion, the ALJ first discussed the evidence tending to establish that Stuberg and

Stone were married.  He pointed out that "[they] resided together between 1991 and October

2007"; "they filed joint federal income tax returns as a married couple in 2004-2006"; Tal

- 9 -

stated that "'they lived together as a couple' in response to a question of whether [Stuberg] and [Stone] were generally known as husband and wife"; "the couple's landlord rented them a one-bedroom home and believed that they resided there as husband and wife between June 1994 and October 2007"; "[Stuberg]'s sister indicated that the parties lived together for 17 years and that the sister (and her husband) 'always considered [Stone] as [their] brother-in-law"; "[Stuberg]'s daughter has also stated that she thought of [Stone] as her stepfather and often told him he was better to her than her 'real' father" and "that she heard [Stuberg] and [Stone] refer to each other as 'husband and wife' on holidays, at work, and to friends and family"; "[Stuberg] submitted a written statement reiterating her assertions that she and [Stone] introduced each other to third parties as husband and wife"; "[Stuberg] also stated that she always believed that she and [Stone] were married until they separated, that [Stone] believed the same thing, and that [Stone] carried her on his medical insurance"; "[Stuberg] was 'a listed drive' on [Stone]'s automobile insurance policy between June 5, 1996 and March 7, 2008"; "[t]here is also a copy of a written 'Separation Agreement' signed by the parties on September 28, 2007 in which [Stuberg] and [Stone] agreed upon a division of property and cash upon their separation"; "[Stuberg] stated that both she and [Stone] thought this would end their common law marriage and was all that was needed for a divorce since they had never obtained a marriage license"; "[Stuberg] testified that she and [Stone] attended church together, and that they were members of an Irving (Texas) Senior Citizens group and were known to the other members as a married couple"; "[Stuberg] credibly explained that she never changed her surname to Stone because she wanted a long-lost

relative to be able to locate her easily under the name of Stuberg"; "[Stuberg] also reiterated that [Stone] introduced her as his wife to family and coworkers, and that they annually took vacations together as 'Mr. and Mrs. Stone,' using money from their tax returns to pay for the vacations"; and "[Stuberg] further asserted that, while she had no direct access to [Stone]'s bank account, he sometimes allowed her to use his ATM card and PIN number to purchase things."  R. 121-22 (parenthesis in original; bracketed material added).

The ALJ then explained that some of the evidence was "ambiguous and could be used to support either side of the issue as to [Stone]'s actual intent to be married to [Stuberg]":

> For example, the statement from [Stone]'s brother indicates that the brother believed the parties to be married.  However, in response to a direct question about whether [Stone] and [Stuberg] ever explicitly referred to each other as husband and wife, the brother specifically responded "no."  The statements of [Stuberg]'s sister and former landlady also simply reflect the opinions of these witnesses and do not specifically indicate that either [Stuberg] or [Stone] affirmatively asserted that they were married.  Further, the statement from the automobile insurance company makes no assertion that [Stuberg] and [Stone] held themselves out as a married couple and, as noted above, the fact that the parties filed joint federal income tax returns does not definitively establish that they did so because they actually believed they were married.

*Id.* at 122 (internal citation omitted).

Finally, the ALJ detailed the evidence that he found clearly disproved a valid common law marriage.  He noted that "[Stone] did not list any marriage to [Stuberg] when he was asked to 'give all of his marital information' when he filed for Social Security retirement benefits"; "[Stuberg] also testified that she and [Stone] never had any joint bank account";

"[Stuberg] has repeatedly acknowledged that [Stone] advised her that he did not want to get married again, because he had been 'burned' in a divorce from his first wife" but "after separating from [Stuberg], the record establishes [Stone] did get married again, in a ceremony on December 31, 2007, and that he also subsequently divorced this wife in a formal court proceeding"; "in her application for widow's benefits, [Stuberg] did not acknowledge the subsequent marriage and stated that [Stone] was last married to her . . . although she testified that she was aware of the subsequent marriage and believed it was done simply to 'make her mad.'" *Id.* at 122-23.  Thus the ALJ concluded:

> [Stone]'s denial of an intention to be married and subsequent ceremonial marriage (and divorce) to another woman, the explicit acknowledgment by [Stone]'s brother that he never heard the parties refer to each other as "husband" and "wife," and [Stone]'s failure to cite his purported common law marriage to [Stuberg] when he applied for Social Security retirement benefits constitutes substantial evidence that he did not agree to be common law married to [Stuberg] and thus that the parties did not have a valid common law marriage.

*Id.* at 123 (parenthesis in original; bracketed material added).

## C

The court concludes that the ALJ's determination that Stuberg and Stone were not married is supported by substantial evidence.  At the outset, the court emphasizes that the relevant inquiry is *not* whether the ALJ's decision is supported by a preponderance of the evidence, or whether the Commissioner or the court could have reached a different conclusion at the administrative level.  Rather, the court's review of the ALJ's decision is limited to determining whether substantial evidence supports his decision.  *See Ripley*, 67

F.3d at 555; *Martinez*, 64 F.3d at 173.  Substantial evidence "is more than a mere scintilla, and less than a preponderance."  *Spellman*, 1 F.3d at 360.  "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices[.]'"  *Dellolio*, 705 F.2d at 125.  And the resolution of conflicting evidence is for the Commissioner rather than for the court.  *See Patton*, 697 F.2d at 592.

Moreover, the ALJ did not "cherry pick" the evidence favorable to his determination. In fact, he spent five paragraphs discussing the "[f]actors tending to establish that the parties *did* have a valid common law marriage."  R. 121 (emphasis added).  The ALJ relied on record evidence that a reasonable mind might accept as adequate to support the conclusion that Stuberg had failed to prove the first element: that Stuberg and Stone had agreed to be married.  He noted that "'non-marital cohabitation for extended periods of time is far more common than it once was,' that 'evidence of a tacit agreement to be married should be weighed more carefully than in the past,' and that 'occasional references as 'my wife' or 'my husband' do not prove a tacit agreement to be married without corroboration.'"  R. 123 (quoting *Flores v. Flores*, 847 S.W.2d 648, 652 (Tex. App. 1993, writ denied)).  As the ALJ noted, when Stone filed for Social Security retirement benefits, he failed to cite his purported common law marriage when he was asked to "give all of his martial information," and Tal stated on the Form SSA-753 that he never heard Stuberg and Stone refer to each other as "husband" and "wife."

The ALJ also relied on the fact that Stone married and divorced another woman after he and Stuberg separated.  The ALJ explained that "'the act of one of the parties to an alleged

common law marriage in celebrating a ceremonial marriage with another person, without having first obtained a divorce, tends to discredit the first relationship and to show that it was not valid.'" R. 123 (quoting *Claveria's Estate v. Claveria*, 615 S.W.2d 164, 166 (Tex. 1981)). Because there is no such thing as a common law divorce in Texas, a common law marriage, "like any other marriage, may be terminated only by death or a court decree." *Claveria's Estate*, 615 S.W.2d at 167. It is undisputed that Stuberg and Stone never terminated their alleged common law marriage by a court decree. And thus the fact that Stone ceremonially married another woman after he and Stuberg separated is evidence that Stone and Stuberg did not have a valid common law marriage. *See Small v. McMaster*, 352 S.W.3d 280, 287 (Tex. App. 2011, pet. denied) (holding that evidence was factually insufficient to support judgment of common law marriage beginning in 1991, and in so holding, citing *Claveria's Estate* for the proposition that alleged husband's ceremonial marriage to another woman in 1998 was evidence disproving common law marriage).

Accordingly, regardless whether the ALJ's determination that Stuberg and Stone did not have a valid common law marriage is supported by a *preponderance of the evidence*, it is certainly supported by *substantial evidence*.

- 14 -

* * *

The Commissioner's decision is therefore

AFFIRMED.

July 13, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE